Iona E. **JOHNSON** and Carmelita R. **Wilkes, Plaintiffs,**

v.

**INDOPCO, INC., a New York corporation, d/b/a Unichema North America, Defendant.**

No. 93 C 2973.

United States District Court, N.D. Illinois, E.D.

Oct. 21, 1993.

---

Steven R. Hansen, Chicago, IL, J. Douglas Weingarten, Chicago, IL, for plaintiffs.

Lisa A. Weiland, Ronald Wilder, Terry James Smith, Stephen Wayne Koslow, Schiff, Hardin & Waite, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of defendant Indopco, Inc., d/b/a Unichema North America ("Unichema") to dismiss. For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

This action involves two black female employees of Unichema who allege that Unichema engaged in unlawful employment practices.[1] Plaintiff Iona E. Johnson ("Johnson"), a current employee of Unichema, began working for Unichema on November 14, 1988 as a secretary. Johnson consistently received high job performance evaluations from her superiors. In November of 1990, Unichema reassigned Johnson to the position of executive secretary for the sales department. Johnson received high job evaluations for her performance as an executive secretary.

---

1. The following facts are drawn from the first amended complaint.

In May of 1991, Johnson began performing the duties of an executive secretary for the president of Unichema. Unichema, however, did not promote Johnson to the higher paying position of the executive secretary to the president. Three months later, Unichema hired a non-black female [2] for the position of executive secretary to the president.

On August 30, 1991, plaintiff Carmelita R. Wilkes ("Wilkes") submitted an application to Unichema for an executive secretary position. On September 23, 1991, the personnel manager, Lance Chambers ("Chambers"), offered Wilkes a receptionist/secretary position, a lower paying position than the executive secretary position. Wilkes accepted the offer and began her employment with Unichema on October 7, 1991. On or about the time Wilkes began working for Unichema, the company hired a non-black female for the vacant executive secretary position. Further, Chambers allegedly made several comments of sexual nature to Wilkes during her employment with Unichema. On February 28, 1992, Wilkes was terminated from her position as a receptionist/secretary.

Johnson and Wilkes filed a complaint[3] against Unichema claiming that Unichema violated the Civil Rights Act of 1964. Johnson alleges that Unichema racially discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Wilkes alleges that she was racially discriminated against and sexually harassed by Unichema in violation of Title VII and 42 U.S.C. § 1981 ("Section 1981").[4]

In response to Johnson and Wilkes' amended complaint, Unichema filed a motion pursuant to Rules 12(b)(1) and 12(b)(6) of Federal Rules of Civil Procedure to dismiss the complaint with prejudice.

## DISCUSSION

On a motion to dismiss, all well-pleaded factual allegations are taken as true. *Mid America Title Co. v. Kirk*, 991 F.2d 417, 419 (7th Cir.1993); *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). All reasonable inferences to be drawn from those allegations are also accepted as true. *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). The court must construe the pleadings liberally, and mere vagueness or lack of detail alone will not constitute sufficient grounds to dismiss a complaint. *Strauss v. Chicago*, 760 F.2d 765, 767 (7th Cir.1985). In the instant case, the court will separately consider and evaluate the claims made by Johnson and Wilkes.

### I. *Johnson's Title VII Claim.*

Johnson alleges in the amended complaint that Unichema denied her a promotion, denied her additional training and denied her equal treatment on the basis of her race in violation of Title VII.[5] Unichema moves this court to dismiss her claim in its entirety. Unichema argues that this court lacks jurisdiction to hear the case and that Johnson fails to state a claim because her

---

2. Johnson does not reveal the race of the hired female employee.

3. In the complaint at bar, Johnson and Wilkes are joined as plaintiffs. The claims of Johnson and Wilkes, however, do not arise out of the same transaction, occurrence or series of transactions or occurrences. The only common element between the claims of Johnson and Wilkes is the defendant employer.

4. Both Johnson and Wilkes employ the term "claim" rather than the term "count," prescribed by Rule 8 of the Federal Rules of Civil Procedure. The court will use the term "claim" in the opinion to be consistent with the complaint.

5. The First Amended Complaint at Law provides in relevant part that:

¶ 13. [Unichema] refused to promote JOHNSON to the position of executive secretary to the president because of her race in violation of [Title VII].

¶ 14. In November of 1991, JOHNSON learned that as an executive secretary she is paid less than non-black secretaries in similar positions at [Unichema].

¶ 15. During her employment with [Unichema], JOHNSON has been denied additional training that has been made available to non-black secretaries in similar positions.

¶ 16. [Unichema] treated JOHNSON differently than it has treated non-black secretaries in similar positions because of her race in violation of [Title VII].

allegations that Unichema denied her additional training and treated her differently than non-black secretaries are outside the scope of Johnson's EEOC charge.[6] To support this argument, Unichema attached the EEOC charge completed by Johnson as an exhibit to Unichema's motion to dismiss.[7]

 A Title VII plaintiff generally cannot bring claims in a civil action that are beyond the scope of the plaintiff's EEOC charge. *Taylor v. Western and S. Life Ins. Co.*, 966 F.2d 1188, 1194 (7th Cir.1992). An aggrieved employee may not complain of certain acts of discrimination to the EEOC and then file an action claiming different acts of discrimination. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992). The purpose of this rule is to afford the EEOC and the employer an opportunity to resolve the matter without resort to litigation. *Id.* A claim is considered to be within the scope of the EEOC charge if it is "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Jenkins v. Blue Cross Mutual Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.) (*en banc*), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). This standard must be applied liberally to effectuate the remedial purposes of Title VII. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir.1985).

The liberal application of the *Jenkins* standard cannot bring the allegation of the "denial of additional training" within the permissible scope of the EEOC charge.[8] Johnson's allegations before the EEOC are limited to Unichema's refusal to promote Johnson to the position of executive secretary to the president and Unichema's failure to pay Johnson the wage other similarly situated white secretaries were receiving.[9] The allegation that Unichema denied Johnson additional training is not "reasonably related to" or "growing out of" these EEOC allegations. Johnson does not allege or contend that the additional training was necessary for the promotion. To the contrary, Johnson stated in her EEOC charge that Unichema hired a *less qualified* individual to fill the position of executive secretary to the president.[10] Hence, the claim of denial of additional training cannot be a basis to impose liability under Title VII.

 The allegation of differential treatment, however, is within the scope of the EEOC charge. The allegations in the EEOC

---

**6.** The court will not consider Unichema's motion to dismiss under Rule 12(b)(1). Unichema filed the motion to dismiss pursuant to Rule 12(b)(1) contending that the court lacks subject matter jurisdiction because Johnson failed to allege certain facts in the EEOC complaint which she now raises in the civil action. The requirement that the allegations in a civil complaint be limited to the scope of the EEOC charge relates to the timeliness of allegations that are not included in the EEOC charge. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir.1985). The requirement of timely filing a claim against a private employer, however, does not relate to the issue of subject matter jurisdiction. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir.1989).

**7.** Rule 12(b)(6) motion typically focuses on the four-corners of the complaint to determine whether the complaint states a cause of action. To determine the proper scope of Johnson's Title VII complaint, however, the court must consider the accusations made in the EEOC charge. *See, e.g., Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983) (the permissible scope of the civil complaint is defined by the EEOC charge and investigation). Rule 12(b)(6) pro-

vides that the court may consider external pleadings and treat the motion as a motion for summary judgment made pursuant to Rule 56. Hence, the court treats Unichema's motion as one for summary judgment.

**8.** This holding is independent of any possible ruling the court may render as to the admissibility and relevance of evidence that may demonstrate that Unichema denied additional training to Johnson because she is an African–American.

**9.** Johnson complained in the EEOC charge that:

I. On November 14, 1988 I started to work for [Unichema] as a secretary. In April 1990 I was assigned to the position of Executive Secretary for Sales. On May 24, 1991, I was denied a promotion into the position of Executive Secretary to the President. In November 1991, I found out that [Unichema] pays me less than a white secretary in similar position.

. . . . .

**10.** "I believe I have been discriminated against because of my race, black, in violation of [Title VII], as amended, in that [Unichema] selected a less qualified white for the position, Respondent pays higher wages to a less qualified white secretary hired after me."

charge establish that Johnson was paid lower wages than white secretaries in a similar position. Payment of wages to black secretaries which were lower than the wages paid to white secretaries in similar positions may be characterized as a form of differential treatment based on race. On a practical level, however, the claim for which Unichema may be held liable under Title VII is limited to differential pay scales based on race and denial of promotion. The mere allegation of "differential treatment" cannot be the basis for imposing liability on Unichema. Paragraph sixteen of the complaint does not specify the differential treatment, thus it amounts to no more than a summary of Johnson's discrimination charge. Although paragraph sixteen will not be dismissed or stricken, the allegation does not raise any new claims for liability distinct from the allegations of denial of promotion and equal pay.

## II. *Wilkes Title VII and Section 1981 Claims.*

Wilkes has filed four claims against Unichema. Two of the claims are based on racial discrimination and the remaining two are based on sex discrimination.[11] Unichema argues that Wilkes' first claim should be dismissed because it requests a jury trial; the second claim should be dismissed under the *Patterson* holding; and the third claim should be dismissed on the basis that the alleged acts of Chambers do not rise to the level of actionable sex discrimination.[12] The court agrees that the third claim fails to allege sufficient facts to state a claim for sex discrimination under Title VII; however, the

first and second claims state a cause of action under Title VII and § 1981.

Under Title VII, employers cannot lawfully refuse to hire an applicant based on his or her race. 42 U.S.C. § 2000e–2(a)(1).[13] To state a cause of action for race discrimination, the complaining party must allege that she "applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see also Bruno v. Crown Point*, 950 F.2d 355, 363 (7th Cir.1991).

█ Wilkes has alleged sufficient facts to establish a Title VII violation. In her complaint, she alleges that she applied for the position of an executive secretary at Unichema, that she was qualified for the position and that Unichema refused to hire her as an executive secretary due to her race. The fact that she was offered the position of a receptionist/secretary, which pays a lower wage, is independent from Unichema's refusal to hire Wilkes as an executive secretary due to her race.[14]

Wilkes first claim, however, will not be submitted to a jury. The Civil Rights Act of 1991 (the "1991 Act") provides that parties may request a jury trial on the claims of discrimination made under Title VII. Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1072 (1991). However, prior to the enactment of the 1991 Act, parties did not have a right to request a jury trial in a Title VII action. The applicability of the

---

**11.** This court finds, without further discussion, that Wilkes' fourth claim of sex discrimination under 42 U.S.C. § 1981 fails to state a cause of action. Claims of sex discrimination are not actionable under § 1981. *Friedel v. Madison*, 832 F.2d 965, 973 (7th Cir.1987) (§ 1981 applies only to race discrimination). Congress did expand the scope of § 1981's applicability in 1991 by an amendment. The amendment to § 1981, however, still limits its applicability to race discrimination. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071 (1991).

**12.** In support of Unichema's motion to dismiss pursuant to Rule 12(b)(6), Unichema submitted various exhibits for the court's consideration. The court will not, however, convert this section

of the motion to dismiss into a summary judgment motion. Thus, the exhibits relevant to the motion will be excluded from consideration.

**13.** 42 U.S.C. § 2000e–2(a)(1) provides that:

It shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]

**14.** Unichema does not argue that Wilkes failed to state a cause of action because Unichema did offer Wilkes a position with the firm.

1991 Act depends on the time of the challenged conduct of the employer. If the unlawful employment practice occurred prior to November 21, 1991, the 1991 Act does not apply. *Mojica v. Gannett,* 7 F.3d 552 (7th Cir.1993). On the other hand, if the unlawful conduct transpired subsequent to the enactment date, the 1991 Act applies. *Id.*

In the instant case, the 1991 Act will not apply because the alleged refusal to hire Wilkes as an executive secretary occurred on September 23, 1991. The court agrees with Unichema that the 1991 Act does not apply to Wilkes' first claim; however, the court rejects Unichema's contention that the first claim must be dismissed because it requests a jury trial. Unichema misreads the amended complaint. Wilkes does not request a jury trial as to the first claim. Rather, the complaint states that "[p]laintiff WILKES demands a trial by jury on all issues *triable* to a jury." First Amended Complaint at 14 (emphasis added). With respect to the first claim, it is *not a claim triable to a jury.*

Wilkes second claim states sufficient facts. to state a cause of action under § 1981. Section 1981 prohibits racial discrimination in the making and enforcement of private contracts.[15] 42 U.S.C. § 1981. The prohibition encompasses the refusal to enter into a contract with another as well as the refusal to offer to make a contract on the basis of one's race or color. *Patterson v. McLean Credit Union,* 491 U.S. 164, 175–176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989). The statute, however, was not designed to extend to postformation racial discrimination or harassment, i.e. failure to promote, sexual harass-

ment. *Id.* The reach of § 1981 is limited to conduct at the initial formation of a contract and to conduct which impairs the enforcement of that contract in the event of a breach.[16] *Id.* at 179–180, 109 S.Ct. at 2374.

A claim of refusal to enter into an employment contract is actionable under § 1981 and Title VII. *Id.* at 180–182, 109 S.Ct. at 2375. Unichema reads Wilkes' second claim as a failure to promote based on race and contends that Wilkes fails to satisfy the "new and distinct relation" standard to maintain a postformation racial discrimination action under § 1981.[17] Unichema's statement of the law regarding actionable postformation discrimination is correct, but Wilkes' second claim does not allege failure to promote based on race, a postformation discrimination. The allegations under the second claim demonstrate that Unichema refused to offer Wilkes the position of executive secretary position for which she initially applied solely based on her race. The alleged violation of § 1981 occurred on September 23, 1991 when Unichema offered Wilkes a lower paying position rather than the executive secretary position for which Wilkes applied because of her race. The reasonable and logical inference drawn from the allegation indicates that the refusal to offer Wilkes the executive secretary position occurred prior to any acceptance of an employment contract. Thus, Wilkes is not obligated to demonstrate the "new and distinct relationship" test as argued by Unichema. Accordingly, Wilkes' second claim states a cause of action under § 1981.

---

15. 42 U.S.C. § 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws...."

16. The Civil Rights Act of 1991 redefined the term "make and enforce contracts" to include acts of postformation racial discrimination. The relevant provision provides that "[f]or purposes of [§ 1981], the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42

U.S.C. § 1981(b), *as amended by* Pub.L. 102–166, §·101, 105 Stat. 1071 (1991). The amended version of the statute, however, is inapplicable to the instant case because the alleged discriminatory conduct occurred on September 23, 1991, prior to the amendment's effective date of November 21, 1991. *See Mojica,* 7 F.3d at 559.

17. Under *Patterson,* the postformation conduct which prevents the employee from obtaining a position "which rises to the level of an opportunity for a new and distinct relation between the employee and the employer is ... a claim actionable under § 1981." *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377.

Wilkes third claim, however, fails to state a cause of action for sexual harassment under Title VII. Title VII prohibits employers from discriminating against any individual based on their gender as well as their race. 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of discrimination based on gender. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986). A claim of sexual harassment may be established by alleging that the employee's economic privileges were linked to sexual misconduct, commonly referred to as the *quid pro quo* harassment, or that the sexual misconduct have created a hostile or abusive work environment. *Saxton v. American Tel. & Tel. Co.,* 785 F.Supp. 760, 764 (N.D.Ill.1992).

Not all work place conduct that may be characterized as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII such that it creates a hostile or abusive work environment. *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405. The challenged work place conduct must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* (quoting *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).

In the case at bar, the acts complained of under the third claim do not rise to the level of "severe or pervasive" such that they alter the condition of Wilkes' employment or create an abusive working environment. The allegations under the third claim establish that Chambers was a personnel manager for Unichema, but fail to explain the extent of his authority. According to the allegations, Wilkes began working for Unichema on October 7, 1991 and during the month of October 1991 Chambers allegedly asked Wilkes why she "had married so young when she could have 'fun' with guys like him" and whether "… her husband 'satisfied' her." First Amended Complaint ¶ 33. Wilkes further alleged that approximately three months later at a company Christmas party, Chambers

asked Wilkes why she would "'settle for second best when [she] could have the best with [Chambers].'" Amended Complaint ¶ 34. The alleged October and December questions posed by Chambers, standing alone, cannot be described as sexual advances sufficiently severe or pervasive such that they alter Wilkes' employment or create an abusive working environment.[18] The third claim lacks factual allegations to show the circumstances surrounding Chamber's misconduct and its detrimental effect on the conditions of Wilkes' employment.

Furthermore, the factual allegations under the third claim are insufficient to state a cause of action for *quid pro quo* harassment. While the alleged sexually connotative inquiries were inappropriate and suggest that Chambers was an insensitive individual who lacked the necessary social etiquette, the inquiries do not rise to the level of sexual advances or requests for sexual favor actionable under Title VII. Moreover, Wilkes has not demonstrated a sufficient nexus between the inquiries and the denial of her employment. Hence, Wilkes' third claim is dismissed for failure to state a cause of action.

In sum, Johnson's claim that Unichema denied her additional training cannot be the basis for imposing liability on Unichema under Title VII because it is outside the scope of the EEOC charge. Johnson's allegation of differential treatment may be futile, but it is within the permissible scope of the EEOC charge. With respect to Wilkes' claims, her first and second claims allege sufficient facts to state a claim under both Title VII and § 1981. The third claim, however, fails to allege adequate facts to establish actionable sexual harassment under Title VII.

### CONCLUSION

For the foregoing reasons, Unichema's motion for partial summary judgment as to Johnson's claim is denied in part and granted in part. Unichema's motion to dismiss Wilkes' claims is denied as to the first and

---

18. Wilkes allege that "there were additional incidents similar to the ones described in paragraphs 33 and 34 which unreasonably interfered with Wilkes work performance and created an intimidating, hostile and offensive working environ- ment." First Amended Complaint ¶ 36. However, the court cannot consider this vague and conclusory allegation in addressing whether the conduct complained of rose to the level which is actionable under Title VII for sexual harassment.

second claim, granted without prejudice as to the third claim and granted with prejudice as to the fourth claim.

IT IS SO ORDERED.