**Iona E. JOHNSON and Carmelita R. Wilkes, Plaintiffs,**

v.

**INDOPCO, INC., a New York corporation d/b/a Unichema North America, Defendant.**

**No. 93 C 2973.**

United States District Court, N.D. Illinois, E.D.

March 8, 1994.

Steven R. Hansen, J. Douglas Weingarten, Chicago, IL, for Iona E. Johnson and Carmelita R. Wilkes.

Lisa A. Weiland, Ronald Wilder, Terry James Smith, Stephen Wayne Koslow, Schiff, Hardin & Waite, Chicago, IL, for Indopco Inc.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are the motions of defendant Indopco, Inc., d/b/a Unichema North America ("Unichema") to dismiss plaintiff Carmelita R. Wilkes' ("Wilkes") second amended Count III[1] pursuant to Fed. R.Civ.P. 12(b)(6) and to sever the claims of plaintiff Iona E. Johnson ("Johnson") and Wilkes pursuant to Fed.R.Civ.P. 21. For the following reasons, the motion to dismiss is denied and the motion to sever is granted.

---

[1]. Wilkes in drafting her complaint, uses the title "Third Claim," rather than employing the title "Count III." For purposes of this opinion, the court will use the term preferred by Rule 10(b) of the Federal Rules of Civil Procedure.

### BACKGROUND [2]

On October 21, 1993, the court granted Unichema's motion to dismiss Wilkes' first amended Count III, violations of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., without prejudice. On November 8, 1993, Wilkes filed her second amended Count III. In response, Unichema filed its motion to dismiss the second amended Count III and to sever the claims of Johnson and Wilkes.

Wilkes' second amended Count III alleges in summary that Unichema violated Title VII by engaging in sexual harassment. Lance Chambers ("Chambers") was the personnel manager for Unichema. As the personnel manager, Chambers had the power and the authority to hire employees to fill the positions of executive secretaries and secretary/receptionists, to grant salary raises and promotions, and to discharge employees.

On August 30, 1991, Wilkes submitted an application to Unichema seeking an executive secretary position. On September 12, 1991, Chambers telephoned Wilkes at her residence and "asked [her] to convince him that he should offer [her] a position [at Unichema]." Second Amended Count III ("Complt.") ¶ 11. On September 22, 1991, Chambers extended an offer to hire Wilkes as a secretary/receptionist, rather than the executive secretary position Wilkes sought in August 1991. Nonetheless, Wilkes accepted the lower paying position of secretary/receptionist.

On October 2, 1991, after Wilkes accepted the employment offer, Chambers telephoned Wilkes that he will visit her home to give her the benefits package and various forms that needed to be completed prior to her first day at Unichema. When Chambers arrived at Wilkes' residence, he requested Wilkes to accompany him to his apartment to retrieve the necessary benefits package and forms. Wilkes agreed, left her residence, and went with Chambers to his apartment.

---

[2]. The court has issued an opinion in this matter detailing the factual background of the case, Johnson v. Indopco, 834 F.Supp. 1039 (N.D.Ill. 1993), and discussion of only those facts relevant to the issues raised in Unichema's motion to dismiss is necessary.

At Chambers' apartment, Chambers opened his briefcase and removed the benefits package and the forms. Chambers had this briefcase with him when he arrived at Wilkes' residence. After observing that Chambers had the necessary documents with him in his briefcase at all times, she inquired as to the reason for bringing her to his apartment under false pretense. Chambers replied that he wanted to talk to Wilkes. Chambers told Wilkes that "he was not convinced that [she] would be happy at [Unichema], that he wanted to be [her] mentor, and that if [she] opened up to him he was sure [she] would advance at [Unichema]." Complt. ¶ 13. The complaint does not allege that other advances or sexually suggestive statements were made at this time.

On October 7, 1991, Wilkes began her employment with Unichema. During Wilkes' brief employment at Unichema, Chambers was her direct supervisor. As part of Wilkes' duties, she worked as a secretary for Chambers in the afternoons after she completed her morning shifts as a receptionist. In October 1991, Chambers asked Wilkes out to lunch. Wilkes accepted the invitation. While walking to lunch, Chambers asked "why [she] would marry so young and why [she] would give up having a lot of 'fun' with guys like [him]." Complt. ¶ 17. Chambers then asked if Wilkes' husband " 'satisfied' her." *Id.* In response to the sexual inquiries, Wilkes told Chambers that his questions were offensive and not welcomed.

In late October and early November 1991, Chambers made additional sexually suggestive comments to Wilkes. During the controversy over Anita Hill's ("Hill") sexual harassment accusations against now Supreme Court Justice Clarence Thomas ("Thomas"), Chambers told Wilkes that Hill was wrong for accusing Thomas and added that Chambers "could 'do a lot' for [Wilkes]." Complt. ¶ 18. In addition to those remarks, Chambers, on three or four occasions, bragged about his ability to sexually satisfy any woman in bed if given the opportunity.

In December of 1991, Chambers again asked Wilkes in sexually suggestive manner " 'why [she] would ... settle for second best when [she] could have the best with [him]."

Wilkes asserts she never consented to the sexual comments, encouraged Chambers to make those comments, or submitted to his innuendos. In January 1992, Chambers started decreasing Wilkes' secretarial duties, until Chambers terminated Wilkes from her employment on February 28, 1992.

## DISCUSSSION

On a motion to dismiss, all well-pleaded factual allegations are presumed to be true. *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). The court must view those allegations in the light most favorable to the plaintiff, *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987), and all reasonable inferences to be drawn from those allegations are also viewed in favor of the plaintiff and accepted as true. *Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). Additionally, the court must construe the pleadings liberally, and mere vagueness or lack of detail alone will not constitute sufficient grounds to dismiss a complaint. *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir. 1985).

The court will first review the defects of Wilkes' first amended Count III to determine whether Wilkes has alleged sufficient additional facts to remedy the initial deficiencies. The court in its earlier opinion held that:

Wilkes' [first amended Count III] ... fails to state a cause of action for sexual harassment under Title VII.... In the case at bar, the acts complained of under the [first amended Count III] do not rise to the level of "severe or pervasive" such that they alter the condition of Wilkes' employment or create an abusive working environment....

Furthermore, the factual allegations under the [first amended Count III] are insufficient to state a cause of action for *quid pro quo* harassment. While the alleged sexually connotative inquiries were inappropriate and suggest that Chambers was an insensitive individual who lacked the necessary

social etiquette, the inquiries do not rise to the level of sexual advances or requests for sexual favor actionable under Title VII. Moreover, Wilkes has not demonstrated a sufficient nexus between the inquiries and the denial of her employment. Hence, Wilkes' [first amended Count III] is dismissed [without prejudice] for failure to state a cause of action.

*Johnson v. Indopco,* 834 F.Supp. 1039, 1045 (N.D.Ill.1993). The thrust of Unichema's argument in its motion to dismiss is that Wilkes failed to remedy the defects identified by the court. Wilkes in its second amended Count III does not attempt to remedy the deficiencies with respect to sexual harassment claim based on the "hostile work environment" theory. Wilkes asserts in her response to Unichema's motion that her second amended Count III does not seek relief under the "hostile work environment" theory; rather, she amended Count III to state a cause of action for *quid pro quo* sexual harassment. Thus, the threshold issue in this motion is whether Wilkes has alleged sufficient facts to state a cause of action for sexual harassment under the *quid pro quo* theory. The court finds that under the liberal pleading standard of the Federal Rules of Civil Procedure, Wilkes has alleged sufficient facts in her second amended Count III to warrant further proceedings and discovery.

Title VII prohibits employers from discriminating against any individual based on their gender as well as their race. 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is a form of gender based discrimination. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986). The *quid pro quo* sexual harassment is one of two types of sexual harassment that is actionable under Title VII. *Id.; Saxton v. American Tel. & Tel. Co.,* 785 F.Supp. 760, 764 (N.D.Ill.1992), *aff'd,* 10 F.3d 526 (7th Cir.1993). To state a cause of action for sexual harassment under the *quid pro quo* theory, the plaintiff/employee must allege sufficient facts to establish that the alleged sexual misconduct is linked to the grant or denial of an economic privilege or benefit *quid pro quo. Meritor,* 477 U.S. at 65, 106 S.Ct. at 2404. Additionally, in the event the employer is a corporation, the injured employee must establish the existence of a *respondeat superior* liability. *Kauffman v. Allied Signal, Inc. v. Autolite Division,* 970 F.2d 178, 186 (6th Cir.), *cert. denied,* ——— U.S. ———, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992); *see also Pelech v. Klaff–Joss, LP,* 828 F.Supp. 525, 529 (N.D.Ill.1993).

Wilkes' allegations under the second amended Count III satisfies all of the necessary elements to state a cause of action against Unichema. Wilkes' first amended Count III failed to state a cause of action under the *quid pro quo* theory, because Wilkes failed to allege facts to establish the link between the verbal misconduct of a sexual nature and Chambers' decision to terminate her employment. The second amended Count III, however, alleges additional facts which demonstrate the nexus between Chambers' verbal misconduct and his decision to discharge Wilkes. Notably, on two separate occasions Chambers requested Wilkes to convince him that Wilkes should be hired; one of those requests came after taking Wilkes to his apartment under false pretense. Chambers also suggested, while he and Wilkes were at his apartment, that if Wilkes "opened up to him he was sure [she] would advance at [Unichema]." Complt. ¶ 13. Additionally, Chambers told Wilkes that he "could do a lot" for her. That statement was made while Chambers criticized Hill for accusing Thomas of sexual harassment.

Unichema argues that the aforementioned acts and statements of Chambers were not inappropriate given their plain meaning. While it is true that considering the alleged acts and statements separately, one can interpret them in an innocent manner, the court, however, will not read the allegations in a vacuum. Chambers' acts and statements must be construed in light of his other sexually suggestive inquiries and braggadocio. For purposes of a motion to dismiss, the totality of the circumstances surrounding Wilkes' allegations are enough to raise an inference that Chambers made sexual advances and terminated Wilkes from her employment when he realized that she had no plans of accommodating his expressed interests. Of course, as discovery proceeds, the

full context of the conversations and the circumstances under which the parties spoke will be fully developed.

Additionally, Wilkes' has alleged enough facts to establish the existence of an agency relationship between Unichema and Chambers. Title VII prohibits "employers" from discriminating against individuals on the basis of, *inter alia,* sex. 42 U.S.C. §§ 2000e–2(a), (b). An "employer" is defined as "a person engaged in industry affecting commerce who has fifteen or more employees for each working day in each of twenty. or more calendar weeks in the current or proceeding year, and any *agent of such person . . . .*" *Id.* § 2000e(b) (emphasis added).

In the case *sub judice,* Wilkes alleged enough facts to establish that Chambers was a supervisory agent of Unichema and that his conduct forming the basis for sexual harassment occurred within the scope of his employment. Chambers had the authority to hire and fire employees. Chambers also had the supervisory power to grant or eliminate economic privileges of the employees.[3]. Accordingly, the motion to dismiss is denied.

■ In addition to the issue of whether Count III states a cause of action under Title VII, Unichema in its 12(b)(6) motion raises the issues of whether a jury trial is available for Wilkes' sexual harassment claim and whether she may recover damages for "pain and suffering, and for the humiliation caused by [Unichema's] unlawful treatment." Complt. ¶ 28b. The answers to those issues turn on whether the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071–1099 ("Civil Rights Act of 1991") is applicable to

Count III. The court answers the issue in the affirmative.

■ Pursuant to the Civil Rights Act of 1991, jury trials are available in Title VII claims. *See* 42 U.S.C. § 1981a(c)(1). The Seventh Circuit has promulgated a bright-line test to determine whether the amended provisions of the Civil Rights Act of 1991 applies to a particular Title VII claim. *Mojica v. Gannett Co., Inc.,* 7 F.3d 552, 559 (7th Cir.1993). If the unlawful employment conduct occurred prior to November 21, 1991, the Civil Rights Act of 1991 is inapplicable. *Id.* Applying the *Mojica* test to the facts of Count III, the Civil Rights Act of 1991 governs Count III because the unlawful employment conduct occurred after November 21, 1991. Unichema contends that the wrongful conduct of Chambers occurred prior to November 21, 1991. This interpretation ignores Wilkes' allegations of wrongful conduct occurring in October, November, and December 1991 and until February 28, 1992. Furthermore, the termination from employment giving rise to Wilkes' sexual harassment action did not occur until February 28, 1992. Thus, under *Mojica,* Wilkes' claim of sexual harassment detailed in Count III may be submitted to the jury.

Additionally, Wilkes may recover compensatory damages for pain, suffering and humiliation. Prior to the enactment of the Civil Rights Act of 1991, compensatory and punitive damages were not available under Title VII claims. *Trautvetter v. Quick,* 916 F.2d 1140, 1147–48 (7th Cir.1990). Title VII only provided for equitable relief such as reinstatement or hiring of employees and back pay. *See* Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g),

3. Unichema argues that it cannot be held liable for the wrongful conduct of Chambers because Wilkes failed to follow the procedures contained in the sexual harassment policy of Unichema. In support of this argument, Unichema attached an affidavit to the motion to dismiss. This is contrary to Wilkes allegation that Unichema failed to establish or publish a policy regarding sexual harassment. In light of the contradiction, the court will not consider the affidavit in addressing Unichema's motion pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Instead, the court will accept Wilkes' allegation as true.

Under Fed.R.Civ.P. 12(b), the court *may* consider matters outside the four corners of the

subject complaint and treat the motion under 12(b)(6) as a motion under Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b). The court will not, however, treat the instant motion as one for summary judgment. Wilkes has been unable to proceed with discovery as to the issues surrounding the third claim because of an existing stay of discovery order. Further, Rules 12(m) and 12(n) of the Rules of the United States District Court for the Northern District of Illinois ("Local·Rule") detail the procedures litigants must follow to properly present a summary judgment motion. *See* Local Rule 12(m), (n). Thus, the court will only consider those allegations contained within the four corners of the third claim.

With the advent of the Civil Rights Act of 1991, however, the limitation of recoverable damages to equitable relief in a Title VII claim was removed. The relevant portion of 42 U.S.C. § 1981a provides that:

In an action brought by a complaining party under [42 U.S.C. 2000e–5] ... against a respondent who engaged in unlawful intentional discrimination ... prohibited under [42 U.S.C. § 2000e–2] ... the complaining party may recover compensatory and punitive damages....

42 U.S.C. § 1981a(a)(1). Moreover, compensatory damages as used in § 1981a, include damages for "emotional pain, suffering ... [and] mental anguish...." 42 U.S.C. § 1981a(b)(3). Thus, Wilkes may recover damages for pain, suffering and humiliation as a result of Chambers' harassment.

■■■ Unichema argues that damages for pain and suffering are barred by the exclusive-remedy provision of the Illinois Worker's Compensation Act, 820 ILCS 305/1 *et seq.*[4] In support, Unichema cites *Juarez v. American Mobile Communications, Inc.,* 957 F.2d 317 (7th Cir.1992). The Seventh Circuit held in *Juarez* that emotional distress caused by sexual harassment in the work place is an injury arising from employment, and therefore, affirmed the dismissal of the plaintiff's claim of intentional infliction of emotional distress as being barred by the Illinois Worker's Compensation Act. *Id. Juarez,* however, is inapposite to the case in controversy for two reasons. First, the plaintiff in *Juarez* alleged discrimination that occurred in 1986 and 1987; prior to the enactment of the Civil Rights Act of 1991. Second, the claim for intentional infliction of emotional distress dismissed by the *Juarez* trial court was a state tort claim subject to the Illinois Worker's Compensation Act. In the instant action, Wilkes does not maintain a state tort claim, rather a federal claim for discrimination. Thus, Unichema's argument is without merit.

■■■ The court will now turn its attention addressing Unichema's second motion which raises the issue of whether the claims of Johnson and Wilkes are properly joined under Rule 20(a) of the Federal Rules of Civil Procedure. Pursuant to Fed.R.Civ.P. 20(a), joinder of persons as plaintiffs in one action is permitted under certain circumstances. The relevant portion of Rule 20(a) provides that:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all these persons will arise in the action.

Fed.R.Civ.P. Rule 20(a) (emphasis added).

The claims of Johnson and Wilkes do not fall within the purview of Rule 20(a) to be joined in a single action. Johnson is a current employee of Unichema. Johnson's Title VII claim arises out of Unichema's alleged discriminatory action in denying her a promotion to the position of an executive secretary to the president of Unichema because of Johnson's race.

Whereas, Wilkes is a former employee of Unichema whose claims arise out of Unichema's alleged discriminatory hiring action in failing to offer Wilkes an executive secretary position based on her race, and arise out of Chambers' sexual harassment of Wilkes. Furthermore, the violations of Title VII claimed by Johnson and Wilkes occurred during different periods of time. While the Title VII claims of Johnson and Wilkes based on race discrimination may share a common question of law, their overall claims do not arise out of the same transaction, occurrence or series of transactions or occurrences. Thus, pursuant to Fed.R.Civ.P. 21, the claims of plaintiffs must be severed.

### CONCLUSION

For the foregoing reasons, Unichema's motion to dismiss is denied and the motion to sever is granted.

IT IS SO ORDERED.

---

4. Wilkes alleges in her third claim that Unichema is a corporate resident of the State of Illinois and that the alleged unlawful employment practices were committed within the State of Illinois.