**Marilyn A. SICILIANO, Plaintiff,**

**v.**

**CHICAGO LOCAL 458–3M, Graphic Communications International Union and American National Can Company, Defendant.**

**No. 95 C 6555.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 25, 1996.

Marilyn A. Siciliano, Chicago, IL, Pro Se.

Wyvonnia Ford Bridgeforth, Law Office of Wyvonnia Ford Bridgeforth, Oak Park, IL, for Marilyn A. Siciliano.

Aaron Edward Hoffman, Thomas Yale Mandler, Schwartz & Freeman, Chicago, IL, for American National Can Company.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Marilyn Siciliano, has filed a three count complaint against her former employer, American National Can Company (the "Company"), and her union, Graphic Communications International Union (the "Union"), alleging violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e–5 ("Title VII"), the Americans with Disability Act, 42 U.S.C. § 12101(a) ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"). Count I alleges that plaintiff was discriminated against because of her gender in violation of Title VII. Count II alleges that plaintiff was discriminated against because of her diabetes mellitus in violation of ADA. Count III alleges that plaintiff was terminated because of her age in violation of the ADEA. The Union has moved to dismiss all three counts; the Company has moved to dismiss Count III. Both motions, brought pursuant to Fed.R.Civ.P. 12(b)(6), allege that plaintiff has failed to exhaust her administrative remedies prior to filing suit in federal court. In addition, both respondents have moved to strike plaintiff's jury demand. For the reasons set forth below, the court grants the motions to dismiss in part and denies them in part, and denies the motion to strike the jury demand without prejudice.

### FACTS

The Company hired plaintiff as a film color separator in February of 1988. Plaintiff remained employed by the Company until her termination on August 31, 1994. Plaintiff was a member of the Union throughout her employment with the Company.

Plaintiff claims that she was verbally harassed and humiliated for a period of several months by her male co-workers and male supervisors. Upon reporting these incidents

to her supervisor and foreman, no action was taken to investigate or discipline the harassers by the Company or the Union. This harassment allegedly continued until her termination.

In addition to verbal harassment, plaintiff alleges that on January 13, 1993, Jim Young, the Company's General Manager, verified plaintiff's previously known diabetes with her physician. Thereafter, Mr. Young proceeded to test plaintiff's blood sugar level with an unsterile instrument. Subsequent to reporting this incident to the Union and the Company, both failed to investigate or take action. Moreover, the Company's superintendent told plaintiff that he believed her emotional problems were directly caused by her diabetes. Thereafter, plaintiff's physician assured the Union and the Company that her diabetes would not interfere with her employment.

On April 26, 1994, plaintiff filed charges with the EEOC against the Company alleging sex and disability discrimination. After an investigation by the EEOC, plaintiff received a right to sue notice against the Company on May 5, 1994.

Plaintiff also filed charges with the EEOC against the Union on August 11, 1994. In the charges against the Union, plaintiff checked the box asserting sex discrimination, and specifically stated that:

I began employment with the employer in February 1988. I am a member of the Graphic Communications International Union. Ongoing since October 15, 1993, I have made numerous complaints regarding various issues with the union. In May 1994, I filed two grievances against the employer with my local union. The union officials have not given my complaints and grievances the same attention and action as those filed by male employees. I have not been given a reason why the issue I raised have been ignored. I believe that I was discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that the union has represented males in union matters better than they represent females.

The EEOC thereafter issued plaintiff a notice of right to sue the Union on September 13, 1995.

On August 31, 1994, four months after plaintiff filed charges against it with the EEOC, the Company terminated plaintiff. She was fifty-nine and a half years old at the time of her termination. She would have been eligible for retirement in December 1994. Plaintiff was replaced by an employee under the age of forty with no disability.

After her termination, plaintiff made the first of two amendments to the EEOC charges against the Company. In the first amendment dated September 13, 1994, plaintiff stated that,

I was accused of being insubordinate because I reported George Palitine for violation of Respondent's rules and would not accept Glen Stam as proper representation from the Union. Palitine was reprimanded while I was suspended and later discharged. Stam has been making it impossible for me to accomplish my daily work tasks in that he harasses me all the time by talking, tapping his pencil on the desk, and putting things out of my reach. All of these actions occurred subsequent to the filing of the original charge in April, 1994.

The second amendment to the EEOC charge filed by plaintiff on January 1, 1995, stated that:

My Union Representative requested from Respondent [the Company] and permission was granted to review my personnel records. During the course of the review of my employment record I noticed that certain documents that I have never previously received (i.e. disciplinary letters) were mysteriously placed into my personnel file and other documents removed. These actions are what I believe another act of retaliation in that; Respondent [the Company] is attempting to justify my involuntary separation from Respondent.

To date, plaintiff has not filed any amendments to the EEOC charges against the Union.

## DISCUSSION
### I. THE UNION

The Union has moved to dismiss plaintiff's amended complaint pursuant to 12(b)(6), Fed.R.Civ.P., for failure to exhaust administrative remedies because the allegations of sex, disability and age discrimination in her amended complaint were not raised within the scope of the underlying EEOC charges.

In general, a plaintiff may file a complaint pursuant to Title VII in the federal court containing only those allegations previously charged with the EEOC. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 94 S.Ct. 1011 (1974). The purpose behind this rule is to allow the EEOC and the defendant to attempt to resolve the case through conference, conciliation, and persuasion, in addition to providing notice to the defendant as to the conduct of which the employee is complaining. *Cheek v. Western and Southern Life Insurance Co.,* 31 F.3d 497, 500 (7th Cir.1994). This rule is not jurisdictional, but does create a condition precedent that a plaintiff must meet prior to filing in federal court. *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir.1985).

Although the general rule requires that the complaint contain allegations only presented in the EEOC charge, courts recognize that most EEOC charges are completed by laypersons, not attorneys. *Cheek,* 31 F.3d at 500. Thus, the plaintiff need not specify every fact in the EEOC charge that is used for the basis of her complaint. *Id.* The test for determining whether the complaint fits within the scope of the EEOC charge is whether the "discrimination is like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mutual Hospital Ins. Inc.,* 538 F.2d 164, 167 (7th Cir.1976).

In Count I plaintiff alleges that throughout her employment with the Company, she was subjected to verbal harassment by her male co-workers and supervisors. Plaintiff reported these incidents to her foreman and supervisor, but she claims that the Company did not investigate or take action against the harassers. Count I does not contain a specific allegation that plaintiff reported the verbal harassment to the Union, nor does it claim that the Union was in anyway involved in the harassment. Count I also does not claim that the Union failed to investigate the harassment because plaintiff is a female. Although Count I does not make a specific allegation against the Union, it does seek relief from both respondents.

The Union asserts that Count I should be dismissed because it seeks to bring claims of discrimination against it that were never presented to the EEOC. Specifically, the Union reads Count I as somehow charging it with the responsibility for plaintiff's termination. As noted, however, Count I actually contains no allegations against the Union. Therefore, it fails against the Union not because it charges beyond the scope of the EEOC charges, but rather because it simply does not accuse the Union of gender based discrimination. Accordingly, the Union's motion to dismiss Count I is granted without prejudice.

The Union has additionally moved to dismiss Counts II and III, asserting that the allegations in the counts are not reasonably related to the charges previously filed with the EEOC. Count II alleges that plaintiff was discriminated against because she had diabetes mellitus and was replaced by a person without a disability. Count III alleges age discrimination because plaintiff was replaced by a person under the age of forty when she was terminated.

In *Jenkins v. Blue Cross Mutual Hospital Insurance,* Jenkins filed charges with the EEOC and checked only the box indicating discrimination based on race. 538 F.2d at 167. Jenkins attempted to support this assertion by describing a situation where she was told by her supervisor that she had not been promoted because she was a Negro with an "afro" hairdo. *Id.* While describing the alleged racial discrimination, Jenkins stated that the supervisor "also accused me of being the leader of the girls on the floor," and that "[a] white employee who associated with me might have been denied her promotion because of her association with me." *Id.* Although Jenkins never specifically checked the box marked "sex" on the EEOC

form, it was clear from her description of the racial discrimination that there was a possibility that she also suffered sexual discrimination. *Id.* at 169. Therefore, that court held that Jenkin's claim of sexual discrimination in her complaint was reasonably related to the EEOC charges. *Id.*

The present case is distinguishable from *Jenkins.* Here, plaintiff stated in the EEOC charges only that, "the Union officials have not given my complaints and grievances the same attention and action as those filed by male employees ... I believe that I was discriminated against because of my sex." This charge was never amended after her subsequent termination. At no time did plaintiff describe conduct by the Union that could possibly be construed as disability and age discrimination while she was describing her sex discrimination allegations. Thus, plaintiff's claims of disability and age discrimination in her amended complaint are not reasonably related to the allegations in the underlying EEOC charges. Therefore, Counts II and III against the Union are dismissed with prejudice.

## II. THE COMPANY

■ The Company has also moved to dismiss Count III for failure to exhaust administrative remedies. Count III alleges that the Company terminated plaintiff because of her age.

As noted above, a claim not in the underlying EEOC charge is cognizable only if it is reasonably related to or growing out of the allegations made in the EEOC charge. *Jenkins,* 538 F.2d at 167. Here, Count III of plaintiff's complaint alleges that she was subjected to age discrimination by the Company when it terminated her employment and replaced her with a person under the age of forty. Plaintiff's original EEOC charge described only sex and disability discrimination. Because it was filed prior to her termination there was no mention of age discrimination in the original charge. Subsequent to her termination plaintiff filed two amendments to the EEOC charge. The first amendment stated only that, "I was accused of being insubordinate because I reported George Palitine for violation of Respondent's rules

and would not accept Glen Stam as proper representation from the union. Palitine was reprimanded while I was suspended and later discharged." Although this statement does discuss her discharge, it does not necessarily encompass her age. Rather, this statement, read in conjunction with the rest of the EEOC charge alleging sex and disability discrimination, suggests that plaintiff believed that she was unfairly terminated on the basis of her sex and disability, not her age. Thus, Count III of her complaint is not reasonably related to the first amendment to the EEOC charge against the Company.

On January 24, 1995, plaintiff filed a second amendment to the EEOC charge against the Company. In that amendment plaintiff stated: "My union representative requested from Respondent [the Company] and permission was granted to review my personnel records. During the course of the review of my employment record I noticed that certain documents that I have never previously received (i.e. disciplinary letters) were mysteriously placed into my personnel file and other documents removed. These actions are what I believe another act of retaliation in that; Respondent [the Company] is attempting to justify my involuntary separation from Respondent [the Company]." Again, these additional statements by plaintiff do not even remotely describe the possibility that her termination was due to her age. Thus, because Count III is not reasonably related to the original EEOC charge or its amendments, that count is dismissed with prejudice with respect to the Company.

## III. JURY DEMAND

Finally, both respondents have moved to strike plaintiff's jury demand. Plaintiff claims that she is entitled to a jury pursuant to the Civil Rights Act of 1991. 42 U.S.C. § 1981a(c)(1).

Prior to the Civil Rights Act of 1991, the only remedy available to a plaintiff under Title VII was equitable. *Johnson v. Indopco, Inc.,* 846 F.Supp. 670, 675 (N.D.Ill.1994). Such equitable remedies included reinstatement or hiring of employees and back pay. *Id.* As amended in 1991, however, Title VII provides for a jury trial in those instances

where the plaintiff is seeking either compensatory or punitive damages instead of, or in addition to, equitable relief. *Townsend v. Indiana University*, 995 F.2d 691, 693 (7th Cir.1993). Compensatory damages include damages for "emotional pain, suffering, and mental anguish," while excluding back pay. *Johnson*, 846 F.Supp. at 675. In her claims for relief, plaintiff has not asked for compensatory or punitive damages. She has, however, alleged suffering such damages in the body of her complaint. Thus, if plaintiff specifically requests compensatory or punitive relief in Count I of her amended complaint, then she will be entitled to a jury trial. Because plaintiff will be filing an amended complaint consistent with this opinion, the motion to strike is denied without prejudice.

### CONCLUSION

The Union's motion to dismiss is granted without prejudice as to Count I, and with prejudice as to Counts II and III. The Company's motion to dismiss Count III is granted with prejudice. The motion to strike the jury demand is denied without prejudice. Plaintiff is ordered to file an amended complaint consistent with this opinion on or before the status report set for December 10, 1996.