**Annie E. RHEAMS, Plaintiff,**

v.

**MARQUETTE UNIVERSITY and
Mary Hoy, Defendants.**

No. 96–C–179.

United States District Court,
E.D. Wisconsin.

May 9, 1997.

Nicholas C. Zales, Zales Law Office, Milwaukee, WI, Robert E. Sutton, Larraine M. McGraw, Sutton Law Offices, Milwaukee, WI, for Plaintiff.

Barry L. Chaet, E. Vanessa Jones, Beck, Chaet, Loomis, Moloney & Bamberger, Milwaukee, WI, for Defendants.

## DECISION AND ORDER

CALLAHAN, United States Magistrate Judge.

### Background.

On January 2, 1996, the plaintiff, Annie E. Rheams ("Dr.Rheams"), filed a summons and complaint in Milwaukee County Circuit Court naming Marquette University ("Marquette" or "the University") and Mark Hoy ("Dr.Hoy") as defendants. Upon being served, the defendants removed the action to this court and filed their answer and affirmative defenses.

In her complaint, Dr. Rheams, an African American female, alleged employment discrimination because of her race, in violation of the Civil Rights Act of 1870, 42 U.S.C. §§ 1981, 1983 and 1985, U.S. Constitution Amendment XIV, the Civil Rights Act of 1991, and Title VII of the Civil Acts of 1964, 42 U.S.C. §§ 2000e, et seq. She also claimed that defendants' actions constituted a breach of express and implied contract, and a wrongful termination of employment. Finally, she alleged intentional infliction of emotional distress and/or outrageous conduct.

On February 23, 1996, the defendants filed a motion to dismiss some of the claims asserted in the plaintiff's complaint. In a decision filed April 4, 1996, this court granted the defendants' motion to dismiss. Specifically, for the reasons stated in that decision, I dismissed the plaintiff's claims under 42 U.S.C. §§ 1983 and 1985, and the Fourteenth Amendment, as well as the state law claim for wrongful termination of employment, as against both defendants. I also dismissed the claims against defendant Mary Hoy, individually, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, **et seq.**, for intentional infliction of emotional distress and for breach of contract. The net result of my ruling on the defendants' motion to dismiss was that there remained: (1) the plaintiff's claim under 42 U.S.C. § 1981 against Marquette University and Mary Hoy; (2) the plaintiff's claim against Marquette University under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq; and, (3) the plaintiff's claim against Marquette University for breach of contract.

The parties have engaged in extensive discovery. Now the defendants have filed a motion for summary judgment arguing that the undisputed material facts demonstrate they are entitled to judgment in their favor. The parties have fully briefed the defendants' motion. Thus, it is ready for resolution. All parties have consented to proceed before this court in accordance with 28 U.S.C. § 636(c) and Rule 73(b), Fed.R.Civ.P. Consequently, this court has jurisdiction to resolve the defendants' motion.

**Facts.**

In support of their respective positions on the defendants' motion, the parties have filed extensive briefs, as well as affidavits and other documentary material. In addition, consistent with Local Rule 6.05(b), the defendants submitted proposed findings of fact. In response, the plaintiff filed objections to the defendants' proposed findings of fact and, in turn, the defendants filed a document entitled "Defendants' Reply to Plaintiff's Objections to Defendants' Proposed Findings of Fact." There are certain proposed findings to which the plaintiff has not objected or responded. Consequently, as to these proposed findings, and consistent with Local Rule 6.05(d), the court will conclude that there is no genuine issue as to their correctness or accuracy.

As to the remaining proposed findings, the plaintiff did respond by filing "objections". These "objections", however, did not precisely comply with Local Rule 6.05(b)(1), in that they did not "clearly delineat[e] **only** those findings to which it is asserted that a genuine issue of material fact exists." Instead, the plaintiff's "objections" appear to be a combination of proposed additional allegedly undisputed material facts and argument. In any event, distilled to their essence, the undisputed material facts in this action are as follows: (In this connection, I hasten to add that only those proposed facts that are supported by affidavits made on personal knowledge and which set forth such facts as would be admissible in evidence, are being considered by this court. **See**, Rule 56(e), Fed.R.Civ.P.)

Defendant Marquette University is a private, post-secondary educational institution established in 1864 and located in Milwaukee, Wisconsin. Students can earn Associate, Bachelor's, Master's, Professional and Ph.D. degrees from the various schools which comprise the University. One of the schools is the School of Education, located at O'Hara Hall, P.O. Box 1881, Milwaukee, Wisconsin, 53201–1881.

There has been a continuous decline in student enrollment at Marquette University since 1990. The total enrollment at Marquette went from 12,200 in 1989 to 10,700 in 1995–96—a reduction of 1,500 students. Stu-

dent tuition accounts for approximately 74% of the University's operating revenue. It is therefore critical that Marquette's academic reputation be maintained so that the University remains attractive to prospective students. It is also of critical importance that the faculty maintain the highest standards of teaching and scholarship to support the academic reputation of the University. The quality of teaching plays a special role in maintaining student interest in attending privately supported universities such as Marquette. Student evaluations, both positive and negative, are taken seriously in evaluating the quality of the teaching provided by the faculty. Student complaints against faculty members are taken equally as seriously.

Defendant Dr. Mary P. Hoy has been employed by Marquette University since August 1994, as Dean of the School of Education.

Plaintiff Dr. Annie Rheams was hired by Marquette for a one-year contract in the 1989–90 academic year as an Assistant Professor at the School of Education.

Dr. Thomas Martin was Dean of the School of Education and was Dr. Rheams' supervisor in 1989–90, and the academic years of 90–91, 91–92, 92–93, 93–94, when Dr. Rheams was given successive one-year contracts.

In Dr. Rheams' evaluation for her first year at Marquette dated August 7, 1990, Dr. Martin stated that he was pleased with her work and was pleased with the fact that she had two articles submitted for publication. However, in her second year at Marquette, Dr. Martin noted in Dr. Rheams' August 19, 1991, evaluation that, while her service was good, on a "scholarly front" the two articles that had been submitted for publication had not yet been published. He further noted her low "SCT" (student evaluation) scores. He noted that her scores were 28.9 as compared to the mean of 57.4 for the School of Education in the fall semester, and for the second semester, her scores were 35.9 as compared to the mean of 53.4 for the School of Education. Dr. Martin specifically asked Dr. Rheams to review her grading pattern and to reevaluate it.

In Dr. Rheams' third year evaluation on September 15, 1992, Dr. Martin noted that her community service was good and her student evaluation scores had increased. However, the two articles that were submitted for publication had still not been published.

On May 5, 1993, the School of Education Promotion and Tenure Committee, which is comprised of all tenured senior faculty members, four full professors and six associate professors, met and conducted an independent evaluation of Dr. Rheams. This is standard procedure for tenure-track professors. At this time, Dr. Rheams was informed that her final year for review for promotion and tenure would be 1995–96. With respect to teaching, the Committee found, among other things, that the data Dr. Rheams presented was not well-tuned to the objectives, and that she had difficulty articulating concepts and explaining how they were related to each other beyond generalities. Some Committee members felt that student feedback to them generally was "negative" regarding her teaching. Undergraduate student course evaluations were reported as generally lower than average for the school. With respect to scholarship, the Committee consensus was one showing a lack of productivity in research and publications and that she would need to pick-up on her publications before the 1995–96 academic year. On the positive side, the Committee acknowledged the extent and variety of service involvement of Dr. Rheams, both within and external to the School of Education and to Marquette University. She was commended for her consultantships to a number of local public schools. She was also commended for her commitment to Messmer High School, to MPS' global education committee and to the MPS Adopt–A–Kid program. She was commended for other service projects as well. In sum, the committee concluded that "the essentials for her to concentrate upon [were] the teaching and research spheres in order to meet the eligibility requirements for promotion and tenure." Dr. Martin reviewed the evaluation and confirmed it with Dr. Rheams.

"Service" is not defined in the **Marquette University Faculty Handbook** as one of the essential criteria for appointment and promotion. Nevertheless, in his August 30, 1993, annual evaluation of Dr. Rheams, Dr. Martin stated, **inter alia:**

> As you know, policy requires that each untenured full-time faculty member be formally evaluated at the end of each year. This year the annual evaluation included contributions from tenured faculty in the School of Education and you received an evaluation letter from the Chair of the Promotion and Tenure Committee in May. I concur with the evaluation of the committee, and below are summary comments in the three elements of teaching, research and publication, and service.

As Dean of the School of Education, Dr. Hoy was Dr. Annie Rheams' direct supervisor in 1994–95 and 1995–96. Dr. Hoy is responsible for managing the faculty and administrative staff in the School of Education, including supervision of the personnel, programs and budget.

On or about December 23, 1994, Dr. Hoy received a letter from Ohio State University which identified Marquette University's School of Education's multi-cultural class. The AACTA's international committee was seeking nominations for teacher education programs and teacher educators who were exemplary in the way in which they prepared teachers in multi-cultural and global education. Dr. Hoy gave this letter and nomination form to Dr. Rheams, who completed the nomination form. Dr. Hoy submitted the fully completed nomination form to Ohio State University in the spring of 1995. Dr. Hoy claims that she allowed the nomination form to be submitted, after having been completed by Dr. Rheams, because of the potential national recognition that Marquette University might get, and because Dr. Hoy wanted to cooperate and assist Dr. Rheams as well as to believe that Dr. Rheams was capable of doing the things she claimed in the nomination form.

In January 1995, Dr. Annie Rheams taught Course Number EDUC048, "Introspective in Diversity: Knowledge in Teaching in a Multicultural Society." Lon Levy was a student in that course during the spring semester, 1995.

A number of events in January and February of 1995 occurred relative to Dr. Rheams' class which Mr. Levy claims concerned him. On March 23, 1995, Mr. Levy met with Dr. Hoy and presented a formal complaint against Dr. Rheams. Mr. Levy had met with Dr. Hoy at least once, and possibly twice, before filing his formal complaint. His March 23, 1995, written complaint consisted of a cover letter and a six page "chronology" of various "problems" he claimed he had experienced with respect to Dr. Rheams' conduct and teaching methods.

According to Dr. Hoy, many students had visited her concerning Dr. Rheams in the months preceding Mr. Levy's complaint, and had expressed complaints similar to those of Mr. Levy. Once again, according to Dr. Hoy, similar complaints had been presented to Mr. Lenora Seitz and Ms. Tracy Tamel, which they in turn related to Dr. Hoy. Dr. Hoy has never identified any of those other students.

Dr. Hoy felt that, given the number and gravity of the complaints, she had no alternative but to investigate the matter. This was the first time in her career as Dean that any student had filed a "formal grievance" against a faculty member. She determined that the most appropriate vehicle for proceeding would be the School of Education Appeals Committee ("the Appeals Committee"). In this regard, the Marquette University student handbook provides that if a student has a complaint of unfair treatment in the academic area, he or she should consult the academic appeals procedure of his or her college. Because the Appeals Committee was the only such committee in the School of Education, Dr. Hoy decided that this committee was the appropriate vehicle to hear Mr. Levy's "grievance."

In a memorandum dated March 24, 1995, Dr. Hoy charged the Committee, consisting of Drs. Augenstein, Bogenshield and Collins, to: (1) review the formal grievance (Mr. Levy's); (2) conduct the inquiries necessary to determine support for or rejection of the validity of the grievance; and, (3) provide specific recommendations to her. She fur-

ther charged the committee to employ the following process in discharging its responsibilities: (1) interview Mr. Levy; (2) interview a random sample of current students in EDUC 048; (3) interview Ms. Seitz and Ms. Tamel; (4) actually observe Dr. Rheams' class (one or more); (5) review course requirements (syllabi, tests, etc., including final graded documents submitted by students); (6) undertake other activities that were deemed necessary to assist in the definition of the problem and in the final recommendation.

In a memo to Dr. Hoy dated April 6, 1995, Dr. Rheams requested that Dr. Hoy immediately cease the "so called formal grievance procedure" against her. Dr. Hoy denied the request. Dr. Rheams appealed Dr. Hoy's decision not to cease the investigation to Dr. Francis M. Lazarus, Vice–President for Academic Affairs, on April 13, 1995. Dr. Rheams challenged the scope of Dr. Hoy's authority to initiate such a committee and requested Dr. Lazarus to discipline Dr. Hoy. Dr. Lazarus reviewed the matter and determined that, in his view, Dr. Hoy had the authority to convene the committee as charged under Article VI of the Administrative Delegations of Marquette University. In a letter to Dr. Rheams, dated April 21, 1995, Dr. Lazarus wrote that he expected "the faculty and students involved with this investigation to cooperate with the Appeals Committee and the Dean in responding to Mr. Levy's grievance."

Prior to Dr. Lazarus' issuing his April 21, 1995, letter to Dr. Rheams, the Appeals Committee commenced and proceeded with its investigation. In the course of its investigation the Committee interviewed Mr. Levy, Ms. Tamel and Ms. Seitz. On April 11, 1995, the Committee issued a report to Dr. Hoy. The April 11, 1995, report stated that, after interviewing these three individuals, the Committee concluded that the principal complaints were that Dr. Rheams provided inaccurate information in class; that there was an inequity and inconsistency in her grading practices; that student expectations provided at the outset of the course were changed as the course proceeded and some of those changes were significant; that students did

not feel comfortable approaching her to discuss and/or to reconcile differences; that students left class feeling badly about themselves and their background, especially if they were white and European; that students dropped the class because of their discomfort and frustration with Dr. Rheams' behavior and practices; that students did not wish to have her as their instructor in future Education courses or as their student/teacher supervisor; and, that students dropped out of Education and pursued other fields of study.

In conclusion, the Committee stated:

> Finally, the committee was uncomfortable with summoning other students from Dr. Rheams' class(es) because such students might perceive that they were being pressured to testify against one of their instructors. More importantly, the committee believed that hearing others would only result in reiteration of the same complaints noted above. Thus, it is returning this grievance to you as a personnel issue within the purview of a Dean's responsibility for further investigation, if such is deemed necessary, and resolution.

After reviewing the Committee's April 11, 1995, report, Dr. Hoy noticed that there were no statements regarding the validity of the seven items that were listed on Mr. Levy's grievance. Accordingly, she asked the Committee to determine the validity of each of the allegations and to report its findings. In a memorandum dated April 24, 1995, the Committee noted, among other things, that "[f]our of Mr. Levy's seven complaints were supported by similar complaints cited by Ms. Tracy Tamel and Ms. Lenora Seitz. They were: . . . expecting students to learn general concepts but testing details . . . grading practices . . . refusing to accept evidence of more than one correct answer to an exam question even when citations were provided from the course texts . . . [and] providing inaccurate information in class." According to the Committee, Mr. Levy's remaining complaints were not supported by similar complaints made to Ms. Tamel and Ms. Seitz. Those complaints which were not supported were: "treating the class in a condescending fashion . . . wasting class time complaining

about student attitudes ... [and] utilizing student questions on class examinations without checking the questions' validity."

The Committee, however, did note "the validity of some complaints not made by Mr. Levy but made by more than one student to either both Ms. Tamel and Ms. Seitz." Those complaints were: "Students not feeling comfortable approaching Dr. Rheams to discuss and/or reconcile differences ... students dropping the class because of their discomfort and frustration with her behavior and practices ... students not wishing to have her as their instructor in future Education courses or as their student teacher supervisor ... [and] students dropping out of Education to pursue another field of study ..."

Dr. Hoy observed Dr. Rheams' teaching on May 3, 1995. This was in response to Dr. Rheams' request for "classroom monitoring." Dr. Hoy's expressed observations were that Dr. Rheams had not stated what the objectives of the class were, that Dr. Rheams had clearly disregarded University policy by scheduling a final exam for the last week of classes, as opposed to during the examination week, and allowing students to take teaching evaluations home instead of having them completed at the end of class.

Dr. Hoy requested to meet with Dr. Rheams regarding the "findings" of the Committee. In a letter to Dr. Hoy dated May 8, 1995, Dr. Rheams declined to meet with Dr. Hoy "to discuss ... findings of the grievance proceedings now pending against [her]." The reason given for her declining such request was the fact that the "matter [had] been turned over to an attorney [and thus] it would not be appropriate to meet with [Dr. Hoy]." She did, however, state that she would "schedule a meeting with [Dr. Hoy] during the week of May 8, 1995, conducive to [Dr. Hoy's] schedule and that of a third party regarding a meeting to discuss [Dr. Hoy's] evaluation of [Dr. Rheams'] teaching observed on Wednesday, May 3, 1995."

In response to Dr. Rheams' May 8, 1995, letter, Dr. Hoy sent Dr. Rheams a letter on May 9, 1995. In that letter Dr. Hoy again requested a meeting with Dr. Rheams to "discuss the findings of the Committee ..."

She further advised Dr. Rheams that should Dr. Rheams decline this request, Dr. Hoy would be compelled to report the matter to Dr. Lazarus.

On May 11, 1995, Dr. Hoy provided Dr. Rheams with a list of the concerns that had been generated from the School of Education Appeals Committee. In that same memo of May 11, 1995, Dr. Hoy stated:

These are significant findings of your peers. It was a most difficult task for the committee to address. Since the committee's action in responding to the allegations of Mr. Levy, several faculty have reported other items of questionable judgment.

You are approaching your year of review for promotion and tenure. I know that you are concerned about your scholarship. This is an important issue. But of even greater concern for the School of Education is your ability to be an effective teacher. I believe that your record over the course of your years at Marquette does not demonstrate the level of performance we expect of our faculty in the School of Education. Your personnel file contains letters from Dr. Martin advising you to consider the areas where you have received substandard evaluations in your teaching. Little change in overall rating has occurred despite the support of the School of Education in sending you to various workshops and meetings which addressed teaching effectiveness. As recently as this spring I shared a document prepared by Dr. Gilbert R. Guerin, student ratings and university instruction with you, as a further effort to provide assistance with common complaints.

It is important for you to be cognizant of the impact of your teaching record. It is a major consideration for tenure in the School of Education and Marquette University. I appreciated the invitation to observe your class on May 3, 1995. A written record and response of that observation is attached. If there is more that you feel the School of Education can do to assess your teaching effectiveness, I ask that you request it.

We will discuss this letter in a meeting on May 11, 1995.

The meeting of May 11, 1995, took place. However, Dr. Rheams, in the presence of Dr. Chris Wiseman, refused to discuss the results of the Appeals Committee report.

Dr. Hoy then contacted Dr. Lazarus who, on May 16, 1995, ordered Dr. Rheams to cooperate. He specifically directed Dr. Rheams "to call Dr. Hoy and to make an appointment to discuss her findings with respect to these [student] complaints and to make that call on or before Thursday, May 23, 1995." On May 25, 1995, Dr. Rheams and Dr. Hoy did meet. Dr. Rheams still refused to comment on any of the seven allegations made by Mr. Levy. In a May 25, 1995, memorandum to Dr. Rheams, Dr. Hoy stated that Dr. Rheams had "declined to comment on the seven allegations made by Mr. Levy" and that Dr. Rheams felt that this was a matter for the University faculty committee as it "specifically [was] against [her] academic freedom ..." Dr. Hoy once again advised Dr. Rheams that "[t]he significant findings of your peers present considerable evidence of substandard teaching."

Dr. Hoy received complaints from other students concerning Dr. Rheams. For example, students Kathleen Hernandez and Amy Hayes told Dr. Hoy that they were intimidated by Dr. Rheams and felt that they could not approach her; that the classroom was not run efficiently; that she allowed some students, but not others, to look at study grades; that she told some students in other sections to look at study grades, and neglected to tell other students of its availability to them; that they believed that her grading was unfair; and, that she treated them like "seventh-eighth graders" such as, grabbing Amy's desk and pulling it forward. One student characterized her teaching methodology as "I learned how not to be a teachers."

On or about May 5, 1995, Dr. Hoy received a letter from Cathy Muenpfler (a student) regarding Dr. Rheams' EDUC 048 class. Ms. Muenpfler complained that Dr. Rheams' "ability in class to communicate her goals and criteria was misleading and confusing." She also complained that Dr. Rheams' "assignments were completely ambiguous" and

that her "testing policies were unjust throughout the semester." She also complained that when she "confronted Dr. Rheams about the inconsistencies on [her] test, she was cold and impersonal." Ms. Muenpfler complained that "although she did give me credit for some of the questions, on the others she was too stubborn to even listen to a different interpretation of her test questions. Like many of her other practices, they too were ambiguous ." Ms. Muenpfler concluded by expressing the feeling "that it is important that [Dr. Rheams'] performance be reviewed and appropriate actions be taken to reconcile any future problems."

On or about May 15, 1995, Dr. Hoy received a note from Dr. Platz to which was attached a letter he had received from Kathleen L. Kraninger (a student). Ms. Kraninger complained that she was "irritated by Dr. Rheams' attitude toward the students." In Ms. Kraninger's view, it appeared that Dr. Rheams was upset at the very beginning of the course and rather than educating the students about diversity and sensitivities to minority groups "Dr. Rheams alienat[ed] us and assum[ed] that they were all bigots." Ms. Kraninger stated: "Throughout the course, Dr. Rheams expressed disappointment in our class. She should have taken a leadership role rather than complain about the type of class she was given." Ms. Kraninger concluded by stating that: "Dr. Rheams is supposed to demonstrate good teaching, but has really been more of an example of what not to do for me. That should not be the case."

Chapter 302 of the **Marquette University Faculty Handbook** expresses the University's written policy regarding faculty appointment and promotion. General criteria for appointment and promotion of faculty members of Marquette University are contained in section 302.02(1). That section provides:

**Essential Criteria,**

The central task of the faculty is to keep knowledge living, and therefore growing, in their students and themselves. Excellence in teaching and scholarship constitutes the essential criteria for appointment and promotion.

With respect to "teaching", the written policy sets forth several varieties of "signs of excellence in teaching", including "presenting subject matter with the clarity which arises from a deepening grasp of the central facts and their vital interplay; exhibiting enthusiastic commitment to seeking, possessing, and sharing knowledge; bringing subject matter, when appropriate, to bear on the human situation; consciously creating the atmosphere that will draw students on to development and use of their powers of invention and discovery; creating the desire in students for further education."

With respect to "scholarship," the written policy states that "[b]eyond advanced degrees earned, there must be other evidence of scholarship, such as: published research or creative works of quality, significant research in new areas and in methods of instruction, and other marks of scholarship, such as respect of competent colleagues, professional recognition, direction of and significant participation in research and in scholarly symposia, and being at home in the scholarly publications of one's field." Although the **Handbook** lists teaching and scholarship as essential criteria, the **Handbook** also lists other criteria to be considered in determining appointment and promotion. These are participative and personal criteria. The **Handbook** states, however, that: "[t]hese criteria will not substitute for deficiencies in teaching and scholarship."

Section 304.07 of the **Faculty Handbook** states that, unless tenured, no faculty member is entitled to reappointment. All such appointments are at the sole discretion of the University, which shall notify in writing any non tenured faculty member on or before July 1, that his/her contract will not be renewed. Pursuant to this provision, on June 15, 1995, Dr. Hoy notified Dr. Rheams that she would not receive reappointment for the 1996–97 academic year, and that her contract for 1995–96 would be her last. Dr. Hoy's June 15, 1995, letter to Dr. Rheams stated:

Dear Dr. Rheams:

The **Marquette University Faculty Handbook** in Section III–A, "Statutes on Faculty Appointment, Promotion and Tenure," Section 304.07 provides for the non reappointment of faculty. This letter is written to notify you that you will not receive reappointment for the 1996–97 academic year and that your contract for 1995–96 will be your last. This decision results from a year of careful study of your past and current performance as a teacher and scholar. It is my hope that you will find an institution which can benefit from your interests and skills.

In the process of making her decision not to renew Dr. Rheams' contract, Dr. Hoy reviewed the prior performance evaluations by Dr. Martin; the independent evaluation of the School of Education Promotion and Tenure Committee; student evaluations; Dr. Rheams' lack of publications and scholarship; complaints by students that had been made to Ms. Lenora Seitz, Coordinator of Advisement and Field Placement for Marquette, and Tracy Tamel, Academic Advisor to the Freshmen Frontier Program, both of whom work closely with the students in the School of Education; complaints that students had made to Dr. Hoy; and, the results of the School of Education Appeals Committee which had investigated the formal complaint (i.e., formal grievance) of Lon Levy, a student enrolled in the School of Education.

Dr. Hoy's decision on June 15, 1995, not to reappoint Dr. Rheams for the 1996–97 academic year did not foreclose Dr. Rheams of the opportunity to be considered for tenure. Dr. Rheams was still on the faculty for the 1995–96 academic year, which was her scheduled time to be considered for tenure. The processes for reappointment and for tenure are distinct and separate from one another. While Dr. Hoy had the authority regarding reappointment, tenure decisions are made by a special and independent Promotion and Tenure Committee.

On September 12, 1995, Dr. Rheams requested the application form and procedures for the tenure promotion. Although there were questions as to the timeliness of her application, the Promotion and Tenure Committee permitted her to apply and to provide the Committee with the necessary documentation for its review. As Dean of the School of Education, Dr. Hoy provided the Commit-

tee with her recommendations. The only additional involvement that the Dean's office has in the tenure process is that the Administrative Assistant helps to compile the information that is received from the applicant, confidential evaluations (peer review) from the field are solicited, and a random solicitation of recommendations from the applicant's former students is conducted. However, it is not the Administrative Assistant's duty to generate the additional information necessary for inclusion in the application.

Two other faculty members have applied for tenure since Dr. Hoy has been Dean of the School of Education. They are Dr. Lauren Leslie, a Caucasian female, and Dr. Platz, a Caucasian male. Dr. Leslie obtained tenure. Dr. Platz did not obtain tenure. Dr. Platz had substantially more publications than Dr. Rheams. No students ever complained to Dr. Hoy or others at the School of Education about Dr. Platz's teaching.

On September 7, 1995, Dr. Rheams requested three (3), two-drawer file cabinets for her office and a movable cart for the computer. Dr. Hoy informed her that no computer carts or tables could be provided, but that the Department was willing to purchase one (1), two-drawer file cabinet or one (1), four-drawer file cabinet for her office. Dr. Rheams received the file cabinet. There is no record of a computer program request being made by Dr. Rheams.

Dr. Hoy did not physically harass Dr. Rheams. Dr. Rheams is physically larger than Dr. Hoy. Furthermore, Dr. Hoy has a heart condition of which Dr. Rheams is well aware. Dr. Hoy did not and would not physically confront or harass any employee.[1]

## Analysis

### I. Standards for Summary Judgment.

Summary judgment is no longer disfavored under the Federal Rules. **See,** *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as

a whole which are designed to 'secure the just, speedy and inexpensive determination of every action.' " It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial times for those that really do raise genuine issues of material fact.") *United Food and Commercial Workers' Union Local No. 88 v. Middendorf Meat Co.,* 794 F.Supp. 328, 330 (E.D.Mo.1992).

Rule 56(c), Fed.R.Civ.P., requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The mere existence of some factual dispute does not defeat a summary judgment motion: the requirement is that there by a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute, and that judgment should be entered in his favor. *Hannon v. Turnage,* 892 F.2d 653, 656 (7th Cir.), **cert. denied,** 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A party moving for summary judgment may satisfy this initial burden by pointing to the adverse party's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; Celotex, 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed. R.Civ.P. **See also,** Celotex, 477 U.S. at 322–23, 106 S.Ct. at 2552–53 and Becker v. Ten-

---

**1.** Other facts, to the extent relevant, will be referenced throughout this decision.

enbaum–Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Rule 56(e), Fed.R.Civ.P. And a party to a lawsuit may not ". . . ward off summary judgment with an affidavit or deposition based on rumor or conjecture. 'Supporting and opposing affidavits shall be made on personal knowledge, . . .'" Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572–73 (7th Cir.1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Griffin v. City of Milwaukee*, 74 F.3d 824, 826–27 (7th Cir.1996); *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). Moreover, neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509–10, nor the demonstration of "some metaphysical doubt as to the material facts," *Matsushita Electric*, 475 U.S. at 586, 106 S.Ct. at 1355–56, will sufficiently demonstrate a genuine issue of material fact. In that regard, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. See also, *Forman v. Richmond Police Department*, 104 F.3d 950 (7th Cir.1997).

The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

## II. Plaintiff's Race Discrimination Claims under Title VII and under 42 U.S.C. § 1981.

### A. Denial of Tenure.

Dr. Rheams claims that she was a victim of racial discrimination. Specifically, she claims that she was denied an employment contract for the 1996–97 academic year because she is an African American. She also argues in her brief that she was denied tenure on the basis of her being African American.

To begin with, the defendants argue that Dr. Rheams should not be allowed to proceed on her claim regarding denial of tenure. This is because, according to the defendants, such a claim is neither within the scope of the complaint she filed with this court, nor within the scope of her EEOC complaint.

The plaintiff's race discrimination claim is based on both 42 U.S.C. § 1981 and Title VII. One of the differences between a claim pursued under Title VII and a claim pursued under 42 U.S.C. § 1981 is the fact that in order to proceed under § 1981 a plaintiff need not have exhausted the administrative procedures called for by Title VII, 42 U.S.C. §§ 2000e, *et seq*. See, *Patterson v. McLean Credit Union*, 491 U.S. 164, 181, 109 S.Ct. 2363, 2374–75, 105 L.Ed.2d 132 (1989). Therefore, whether or not Dr. Rheams is entitled to proceed before this court on a claim that she was discriminated against when she was denied tenure requires an examination of Title VII law, as well as the general pleading requirements of the Federal Rules of Civil Procedure.

Dr. Rheams' EEOC complaint was filed in September 1995. In it, she claimed that she had been discriminated against on the basis of her race. She claimed that the last date on which discriminatory action had been taken against her was June 15, 1995. The text of her EEOC complaint alleges, **inter alia**, that:

\*     \*     \*     \*     \*     \*

H.   On July 15, 1995 [2] I received a letter for (sic) Dean Hoy stating I would not receive a contract for the 1996–97 academic school year.   The reason for the non-renewal was allegedly due to my teaching and scholarship.

1.   The effect of the non-renewal of a contract is that I will not have the opportunity to be considered for tenure.

\*       \*    ·   \*       \*       \*       \*

The only mention of tenure in her EEOC complaint is that which is found in paragraph I above.   In other words, nowhere in her EEOC complaint did Dr. Rheams claim that Marquette University denied her tenure because she is an African American.   Indeed, she could not have made such an allegation precisely because, at the time that she filed her EEOC complaint, she had not yet been considered for, or denied, tenure.   Hence, at most, her EEOC complaint alleged that one of the effects of the racial discrimination committed against her would be that she would not have the opportunity to be considered for tenure.

■ It is well-settled that to allow a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.   *Steffen v. Meridian Life Insurance Company,* 859 F.2d 534, 544 (7th Cir.1988), **cert. denied,** 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989).   **See also,** *Rush v. McDonald's Corporation,* 966 F.2d 1104, 1111 (7th Cir.1992) (Court upheld a lower court's dismissal of plaintiff's racial harassment claim noting that her charge had only referred to her termination having been due to race discrimination.); *Monaco v. Fuddrucker's, Inc.,* 1 F.3d 658, 660 (7th Cir.1993) (Plaintiff was barred from raising any claim premised on a failure to promote because he made no reference to a failure to promote in his charge.); *Johnson v. Indopco, Inc.,* 834 F.Supp. 1039, 1042 (N.D.Ill.1993) (Plaintiff's allegation that she was denied additional training was beyond the scope of her EEOC charge and, hence, could not be a basis to impose liability under Title VII); *Taylor v. Western and Southern Life Insurance Company,* 966 F.2d 1188, 1194 (7th Cir.1992).

■ Reasonably construed, the plaintiff's EEOC complaint asserted that it was about her being denied renewal of her employment contract that she was complaining.   Her EEOC complaint did not contain, and could not reasonably be construed to have contained, a claim of denial of tenure based on race discrimination.   Thus, Dr. Rheams cannot proceed on such claim in this court, at least under Title VII.

■ Similarly, her complaint in district court makes no mention of any decision regarding tenure.   To the contrary, the essence of the plaintiff's claim is found in paragraph 6 of her complaint, in which she alleges:

Acting in her supervisory capacity as Dean of the Department of Education for Marquette University the defendant, Mary Hoy, engaged in a course of conduct to harass the plaintiff including pretextual criticism over the plaintiff's teaching performance *culminating in the notice to the plaintiff that her contract with Marquette University would not be renewed for the 1996/1997 academic school year* ... (emphasis provided)

Rule 8, Fed.R.Civ.P., provides, in pertinent part, that:

(a) **Claims for Relief.**   A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks ...

\*       \*       \*       \*       \*       \*

(f) **Construction of Pleadings.**   All pleadings shall be so construed as to do substantial justice.

---

**2.**   Actually it was June 15, 1995.

■ That the Federal Rules require only "notice" pleading, however, does not mean that a defendant is not entitled to some protection from having to defend itself against claims that are not reasonably contained within the plaintiff's complaint. Indeed, Rule 8 itself requires that the claim be "short and plain." This has been construed to require that a claim for relief be stated with brevity, conciseness, and clarity. 5 Charles A. Wright & Arthur R. Miller, **Federal Practice and Procedure: Civil 2d** § 1215. Pleadings must discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim. Wright & Miller, **supra.**

■ The plaintiff's complaint surely complied with the requirements of Rule 8, Fed. R.Civ.P. in the sense that it was short and plain. That's the point. The problem, from the defendants' perspective, is that the plaintiff now seems to be pursuing a claim for which the plaintiff's complaint did not give fair notice. The plaintiff's complaint made specific reference to Dr. Hoy's letter of June 15, 1995, which had advised the plaintiff that her contract for employment would not be renewed. Moreover, the notice of right to sue on the EEOC charge that had dealt only with the denial of renewal of her contract was attached to the complaint. Thus, the defendants argue that the plaintiff's complaint in this court did not contain, and could not reasonably be construed to have contained, a claim for denial of tenure based on race discrimination. See, *Aikens v. Banana Republic*, 877 F.Supp. 1031, 1038 (N.D.Tex. 1995).

I agree. In my view, the plaintiff's complaint, reasonably (even liberally) construed, does not contain a claim for denial of tenure based on race discrimination. Consequently, this court's decision will deal only with the plaintiff's claim that she was not reappointed, i.e., that her employment contract was not renewed, for the 1996–97 academic year, based on race discrimination.

### B. Denial of Reappointment.

Race discrimination claims under Title VII and under 42 U.S.C. § 1981 are, like any other civil claim, subject to summary judgment if the court, based on the submissions, is persuaded that there is no genuine issue of material fact for trial and that the defendant (or whichever party is moving for summary judgment) is entitled to judgment as a matter of law.

There are two ways in which a plaintiff can avert summary judgment for the defendant in an employment discrimination case. The first is by submitting, or presenting, enough evidence, whether direct or, more commonly, circumstantial, to create a triable issue of whether the adverse employment action of which she complains had a discriminatory motivation—whether she was fired, or denied a promotion, or not hired, or paid less, because of the racial or other protected group to which she belongs. *Wallace v. SMC Pneumatics*, 103 F.3d 1394, 1397 (7th Cir. 1997). The second way of averting summary judgment in an employment discrimination suit, the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), way, is by presenting evidence that the plaintiff was qualified for the job in question and that she lost it to, or was otherwise treated less favorably than, a member of another race, sex, nationality or, in the case of age discrimination, a substantially younger worker—and that the employer's stated reason for the adverse action is unworthy of belief, a mere pretext. If the employer presents no evidence that the plaintiff was not qualified or not treated less favorably, and offers no reason for the action taken against the plaintiff, then the plaintiff is entitled to judgment on the spot and so does not have to hazard a trial. *Wallace*, 103 F.3d at 1397.

Stated another way, a plaintiff in a disparate treatment discrimination case may produce direct evidence, or indirect evidence, of discrimination. The indirect method requires that the plaintiff apply the burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp.*, **supra.** Initially the burden is on the plaintiff to establish a prima facie case of discrimination. To establish a prima facie case of discrimination, the plaintiff must show: (1) that the plaintiff belongs to a protected group; (2) that the plaintiff performed the job satisfactorily; (3) that the plaintiff suffered an ad-

verse employment action; and, (4) that the employer treated similarly situated employees outside the protected group more favorably. If the plaintiff establishes all of the elements of a **prima facie** case, the plaintiff raises an inference of discrimination. **See,** *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir.1994).

Once the plaintiff establishes a **prima facie** case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the challenged employment decision. Finally, if the defendant produces a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to show that the legitimate, nondiscriminatory reason was pretextual. **See,** *Kirk v. Federal Property Management Corp.,* 22 F.3d 135, 138 (7th Cir.1994). The plaintiff may prove pretext directly by showing that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason [for the adverse employment action] is unworthy of credence." *Billups v. Methodist Hospital of Chicago,* 922 F.2d 1300, 1303 (7th Cir.1991) (**citing,** *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

That the plaintiff seeks relief under 42 U.S.C. § 1981 in addition to under Title VII, does not render the above analysis inapplicable. To the contrary, the Supreme Court made clear in *Patterson v. McLean Credit Union,* **supra,** that the same principles of proof and allocation of burden of proof are applicable to race discrimination claims brought under both Title VII and 42 U.S.C. § 1981. In *Patterson,* the court stated:

> ... In order to prevail under § 1981, a plaintiff must prove purposeful discrimination.... We have developed, in analogous areas of civil rights law, a carefully designed framework of proof to determine, in the context of disparate treatment, the ultimate issue whether the defendant intentionally discriminated against the plaintiff ... We agree with the court of appeals that this scheme of proof, structured as a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimina-

> tion," ... should apply to claims of racial discrimination under § 1981.

*Patterson,* 491 U.S. at 186, 109 S.Ct. at 2377–78.

The Supreme Court in *Patterson* went on to state that under this well-established framework of proof, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a **prima facie** case of discrimination. It noted that this burden is not onerous. *Id.* However, if a plaintiff cannot establish any one of these elements, summary judgment for a defendant is proper. **See,** *Reed v. AMAX Coal Co.,* 971 F.2d 1295, 1299 (7th Cir.1992).

The plaintiff acknowledges, at page 7 of her brief, that she "has no direct evidence of racial discrimination ..." Thus, it is against the back drop of the above well-established framework of proof that Dr. Rheams' claims, and proof in support thereof, must be examined in order to determine whether she is entitled to proceed to trial on her race discrimination claim.

The parties have no dispute over the fact that the plaintiff belongs to a protected group and that she suffered an adverse employment action, i.e., elements 1 and 3 of the **prima facie** test. The dispute between them arises over the second and fourth elements. Specifically, the defendants argue that the plaintiff can prove neither that she performed her job satisfactorily nor that similarly situated employees outside the protected group were treated more favorably than she was treated. Furthermore, even assuming the plaintiff could establish a **prima facie** case, the defendants argue that the plaintiff has failed to show that the legitimate, nondiscriminatory reasons proffered by the defendants for not renewing her employment contract for the 1996–97 academic year were pretextual.

And so, a journey through the materials provided by the parties is to be undertaken to determine whether the evidence is such that a "reasonable jury could return a verdict for [Dr. Rheams]", Anderson, 477 U.S. at 248, 106 S.Ct. at 2510, on whom the burden of proof rests.

### 1. Did the plaintiff perform her job satisfactorily?

■ Dr. Rheams argues that the evidence demonstrates that she was performing her job satisfactorily. She points out that she was qualified for the position of Assistant Professor. After all, she holds a B.A. from Grambling University, an M.S. from Alabama A & M University, and a Ph.D. from the University of Wisconsin–Milwaukee. And she notes that she received a raise each year that she was employed by Marquette. Indeed, she points out that in contrast to the complaints of Mr. Levy, there were other students who described her as "a wonderful teacher," "very knowledgeable and authoritative on her subject," and "one of the warmest professors I've ever had." One student even wrote that "Dr. Rheams is awesome!"

Dr. Rheams also notes that in evaluations of her performance by Dr. Martin when he was Dean of the School of Education, he made the following statements about her performance: "Your first year with us has been very good ... Your positive attitude and your professional outlook provide an excellent role model for our students." (1990); "You have done well in the area of service to the University." (1991); "In the area of teaching, I noted that your SCT scores improved over last year." (1992); "I am pleased to see your SCT scores improving." (1993).

Given the foregoing, I am persuaded that Dr. Rheams has satisfied the second element of a **prima facie** case.[3]

### 2. Did the defendants treat similarly situated employees outside the protected group more favorably?

■ In an effort to establish the fourth element of a prima facie case, Dr. Rheams states as follows:

... Although Dr. Hoy discriminated against Dr. Rheams in a number of ways involving the terms and conditions of her employment, a key difference is that, based on the unsubstantiated complaints of a disgruntled student, Lon Levy, Dr. Hoy went beyond her authority and convened a committee to investigate Dr. Rheams ... This extraordinary situation is clearly "different treatment". The defendants describe a student complaining to a Dean about a teacher as "a unique situation" ...

Marquette's history as a school dates to 1848; it was chartered by the State of Wisconsin in 1864 ... It hardly seems possible that a school in existence for 148 years would consider a student complaint "a unique situation". With over 100 years of history to draw from, Marquette cannot cite a single instance of any nonminority professor being subjected to what Marquette and Dr. Hoy did to Dr. Rheams. This establishes the fourth prong of the test ...

(Plaintiff's Brief, p. 11).

I disagree. First of all, there is no evidence that Dr. Hoy went "beyond her authority" in calling upon the Appeals Committee. To be sure, Dr. Hoy did direct the School of Education Appeals Committee to undertake a review of Mr. Levy's complaint, to determine its accuracy and then to make recommendations to Dr. Hoy concerning how to deal with whatever findings were made. But to say that Dr. Hoy went beyond her authority in referring such a matter to the Appeals Committee is an overstatement.

Indeed, Dr. Rheams appealed Dr. Hoy's actions (i.e., referring the matter to the Appeals Committee) to Dr. Francis Lazarus. Dr. Lazarus, who was the Vice–President for Academic Affairs, rejected her appeal. In his letter to Dr. Rheams, dated April 21, 1995, Dr. Lazarus stated:

I have received your letter of April 13, 1995 in which you document Dean Hoy's actions in pursuing a formal grievance filed by Mr. Lon Levy on March 23, 1995. I have checked the University documents with respect to your complaint that Dr. Hoy is not following appropriate procedures and this letter contains my response to your grievance.

---

3. That Dr. Rheams has satisfied the second element of making out a **prima facie** case does not, however, mean that the defendants were precluded from sincerely (even if incorrectly) viewing her job performance (i.e., teaching and scholarship) to have been unsatisfactory. **See,** Section IIC, **supra.**

Article VI of the **Administrative Delegations** of Marquette University specify that deans and directors exercise by delegation from the Academic Vice President certain general powers and responsibilities entrusted to them by the University. Those powers are specified in Article I,F as follows "in administrative and operating matters delegated to him or her and having no substantial impact upon any area of administration other than his or her own, each major staff officer is authorized to formulate, promulgate, interpret and administer standards, rules and statements of policy and procedure, and to subdelegate such authority to such extent as he or she may deem appropriate."

What this paragraph of the University **Delegations** means is that deans exercise executive right to investigate any and all matters pertaining to the quality of instruction and research within their area of responsibility in a manner in which they think is appropriate, provided that such procedure is not specifically inhibited by other rules or policies of the University. In your case, Mr. Levy made a specific charge about the quality of your teaching which, in my opinion, would have been irresponsible for the dean to ignore or neglect. This fact is particularly true since twelve other students have made similar complaints about your teaching this semester, although none of them submitted his or her criticism to writing.

In such a case, the dean could have taken it upon herself to investigate the students' complaints individually and arrive at a finding completely on her own authority. It appears to me that Dean Hoy has attempted to use a due process procedure which was already established for grade appeals in the School of Education to investigate the students' complaints. In this respect, I believe that Dr. Hoy is complying with another's section of Article VI of the **Delegations** which requires that deans achieve "the greatest possible degree of departmental, faculty, and student participation, consultation, and effective direction." By choosing to consult with colleagues within the School concerning Mr. Levy's complaint, Dean Hoy has promoted consultation among the faculty in an important matter of academic quality within the School and has responded to earlier complaints on your part that she was singling you out for unfair treatment.

Since Dean Hoy's actions in investigating this grievance are specifically within her authority as specified in the **Administrative Delegations** of the University, and since she has the right to conduct her inquiry in any fashion not specifically prohibited elsewhere, and since she chose to use the School's Grade Appeals Committee in order to effect greater consultation and respond to your charges of unfair treatment of you by her, I find that her actions in responding to Mr. Levy's grievance are within the scope of official Marquette University policies and an appropriate exercise of her executive authority as dean. Therefore, I will not intervene in the current proceedings with respect to this grievance, and I expect the faculty and students involved with this investigation to cooperate with the Appeals Committee and the dean in responding to Mr. Levy's grievance.

In sum, there is no evidence that Dr. Hoy went beyond her authority in referring the Lon Levy complaint to the Appeals Committee; the evidence is quite to the contrary.

Dr. Rheams argues that, in any event, the Committee investigation was clearly "different treatment" because "[w]ith over 100 years of history to draw from, Marquette cannot cite a single instance of any nonminority professor being subjected to what Marquette and Dr. Hoy did to Dr. Rheams." The plaintiff seems to have the burden of proof backwards.

■ It is not up to Marquette to show that Dr. Rheams was treated no differently than a nonminority professor. Instead, it is the plaintiff's burden to produce evidence from which a reasonable jury could conclude that Marquette and Dr. Hoy treated a similarly-situated non-African American Assistant Professor more favorably than Dr. Rheams. See, *Greenslade v. Chicago Sun Times, Inc., et al.*, 112 F.3d 853, —— slip op. p. 17 (7th Cir.1997).

In other words, in order to satisfy the fourth element, Dr. Rheams must show that a student complaint similar to that of Mr. Levy's against a non-African American faculty member was handled differently, i.e., that the faculty member did not have to go through the same process that Dr. Rheams went through. Dr. Rheams has not done so. To the contrary, the undisputed facts are that Mr. Levy's written complaint was the first time in Dr. Hoy's career as Dean that any student had filed a "formal grievance" against a faculty member. Nor is there any evidence of such similar "formal grievance" having been filed with Dr. Hoy's predecessor, Dr. Martin. Thus, Dr. Rheams has failed in her proof because she has not demonstrated that a non-African American faculty member against whom a "formal grievance" was filed by a student was treated more favorably than she. In sum, she has failed to prove a **prima facie** case of race discrimination.

### C. Has the Plaintiff Shown Pretext?

As stated, in my opinion, Dr. Rheams has failed to make out a **prima facie** case of race discrimination. Nevertheless, I will address the issue of pretext. This is not inappropriate. **See,** *EEOC v. Our Lady of the Resurrection Medical Center,* 77 F.3d 145, 149–50 (7th Cir.1996) (advancing to dispositive issue of pretext without deciding if plaintiff established **prima facie** case and collecting cases).

Even assuming that Dr. Rheams had adequately made out a prima facie case of race discrimination, she must present evidence that the defendants' proffered reason for not offering her a contract for the 1996–97 academic year—dissatisfaction with her job performance, i.e., teaching and scholarship—is pretextual in order to succeed on her claim. She must present evidence from which a finder of fact could reasonably infer pretext. *Essex v. United Parcel Service, Inc.,* 111 F.3d 1304 (7th Cir.Ind.).

A plaintiff can prove pretext either by presenting direct evidence that a discriminatory reason motivated the employer's decision or by presenting evidence that the employer's proffered reason is unworthy of credence, thus raising the inference that the real reason is discriminatory. *Id.* In examining pretext, the question is whether the employer honestly believed its proffered reason for discharge, or other adverse employment action. *Id; Sample v. Aldi, Inc.,* 61 F.3d 544, 549 (7th Cir.1995); *Kralman v. Illinois Department of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir.1994); *McCoy v. WGN Continental Broadcasting Company,* 957 F.2d 368, 373 (7th Cir.1992). The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual. *Sample,* 61 F.3d at 549; *Kralman,* 23 F.3d at 156; *McCoy,* 957 F.2d at 373. Thus, to prevent summary judgment, Dr. Rheams must present evidence that the defendants are insincere when they claim to have not renewed Dr. Rheams' contract for the 1996–97 academic year because of dissatisfaction with her teaching and scholarship. Essex, 111 F.3d 1304, 1309 (7th Cir.Ind.). She has not done so.

In her effort to prove pretext, Dr. Rheams does little more than argue her personal conclusion that the reason for her not having her contract renewed must have been race. She argues as follows:

When Dr. Hoy became Dean of the School of Education, at the start of the 1994–95 school year, Dr. Rheams had been a successful professor for many years under Dean Martin (1989–90—1993–94) ... She had demonstrated her ability in the two crucial areas of teaching and community service ... Realizing Dr. Rheams was close to achieving tenure, Dr. Hoy began to engage in acts designed to confuse, belittle and humiliate her, all designed to affect her professional relationships and teaching ... She engaged in a course of conduct to make it appear that Dr. Rheams was not performing satisfactorily ... The defendants appear to disregard Dr. Rheams' successful years under Dean Martin and focus almost entirely exclusively on one semester under Dean Mary P. Hoy. (Spring, 1995).

It is not surprising that Dr. Rheams would have a difficult relationship with a superior who was acting against her professional interests. Dean Mary Hoy, in keeping

with the "Marquette Culture" could not afford to allow an African–American to obtain tenure on her watch. As a new Dean she had to toe the Marquette line. She intentionally engaged in discriminatory conduct and used unauthorized procedures to make Dr. Rheams look bad. In key situation (sic), Dr. Hoy took the unsubstantiated word of a student over that of Dr. Rheams without seeking her input . . . The culmination of her efforts was an extraordinary committee she formed to investigate Dr. Rheams . . . Taking all this into account, a reasonable jury could easily find the defendants' reasons are a pretext. Dr. Rheams has been described by her Dean as a "role model," by a student as "awesome!" and her contract was renewed six times . . . That suddenly, upon the verge of tenure, the defendants discovered Dr. Rheams' performance was inadequate seems implausible. If it were so inadequate in the 1994–95 school year, then why was she given another contract and a $2,000 raise for the 1995–1996 school year?

(Plaintiff's Brief, pp. 12–14).

This, in my view, is not sufficient to prove that the defendants were insincere when they decided that her job performance (i.e., teaching and scholarship) was unsatisfactory. To be sure, there were students who had found Dr. Rheams to be a good teacher. But this does not mean that the defendants were bound to accept those students' opinions over the views of other students who strongly complained about Dr. Rheams' teaching methods in the spring of 1995, including Lon Levy, Kathleen Hernandez, Amy Hayes, Kathleen L. Kraninger and Cathy Muenpfler. Moreover, for the reasons stated previously, the plaintiff has not demonstrated that Dr. Hoy's referral of Mr. Levy's complaint to the Appeals Committee was an "unauthorized procedure[ ]." Nor has she demonstrated that the Appeals Committee was an "extraordinary Committee."

■ It may very well be that Marquette University made a terrible mistake in not renewing Dr. Rheams' contract; it may have been an act of sheer "stupidity." But the Seventh Circuit has noted that employers may act for many reasons, good and bad;

they may err in evaluating employee's strengths; unless they act for forbidden reasons, these errors (more properly, differences in assessment) do not matter. *Kuhn v. Ball State University*, 78 F.3d 330, 332 (7th Cir.1996). Consequently, unless defendants act for a forbidden reason, "no matter how medieval a firm's practice is, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII . . . does not interfere." *Sample*, 61 F.3d at 551.

It is not for this court to opine on the question of whether Dr. Rheams was a good teacher or a bad teacher or somewhere in between. Nor is it for this court to decide whether Marquette and Dr. Hoy should have given Dr. Rheams' "service" to the Marquette community, and to the larger Milwaukee community, more consideration than it apparently was given (in contrast to her "teaching" and her "scholarship"), in deciding whether to offer her a contract for the 1996–97 academic year. This court's task is limited to deciding whether Dr. Rheams has presented admissible facts, as opposed to argument, sufficient for a jury to reasonably conclude that the defendants did not offer her a contract for the 1996–97 academic year *because she is an African American*. For the reasons expressed above, I conclude that she has not done so. Thus, the defendants are entitled to summary judgment in their favor on the plaintiff's claims of race discrimination under Title VII and under 42 U.S.C. § 1981.

### III. Plaintiff's Breach of Contract Claim.

■ Disposing of the plaintiff's race discrimination claims leaves only the plaintiff's breach of contract claim. For the reasons which follow, it is my opinion that dismissal of this claim, without prejudice, is appropriate under 28 U.S.C. § 1367.

Title 28 U.S.C. § 1367 provides, in pertinent part, that:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have sup-

plemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

\* \* \* \* \* \*

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) The claim raises a novel or complex issue of State law,

\* \* \* \* \* \*

(3) The district court has dismissed all claims over which it has original jurisdiction...

This action found its way to this court by way of removal from the Milwaukee County Circuit Court. The basis for removal was "because it involv[ed] a claim to recover damages and to enforce rights bestowed by federal statutes prohibiting race discrimination, and by the United States Constitution", and because this court had original jurisdiction over such particular claims, pursuant to 28 U.S.C. § 1343.

All federal claims have now been resolved. The breach of contract claim calls for the application of state law to (1) Dr. Rheams' employment contract with Marquette University and (2) various Marquette University policies and procedures. Moreover, the plaintiff argues that "[e]very contract contains an implied covenant of good faith and fair dealing", which the plaintiff claims Marquette University violated. (Plaintiff's Brief, p. 15). Whether Wisconsin recognizes a duty of good faith and fair dealing when it comes to termination of an employment contract is questionable. **See,** *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983). It is, in any event, a question better left for a Wisconsin state court, and not this court, to decide.

This lawsuit was originally filed in state court. Each and every claim over which this court had original jurisdiction has now been resolved. In my view, the exercise of sound discretion calls for the only remaining claim, a state law claim for breach of contract, to be resolved in a Wisconsin state court, from whence it was removed.

Accordingly, and pursuant to 28 U.S.C. § 1367, the court declines to exercise jurisdiction over plaintiff's breach of contract claim and such claim is **DISMISSED, WITHOUT PREJUDICE,** to be refiled in Wisconsin state court.

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment is **GRANTED** and this action is **DISMISSED,** except that plaintiff's breach of contract claim against Marquette University is **DISMISSED, WITHOUT PREJUDICE,** to refile in state court.